# Phillips *against* Lawrence.

Damages arising from a breach of warranty of goods sold may be set-off in an action on a note given in a different transaction.

ERROR to the District Court for the city and county of *Philadelphia*.

This was an action on the case brought by——Lawrence & ——Robinson, trading as Lawrence & Robinson, against John Phillips & Daniel P. Bussier, trading as Phillips & Bussier, on the following promissory note:

$1539.78.  
*New York, 6th Dec.* 1841.

Four months after date we promise to pay to the order of Lawrence & Robinson fifteen hundred and thirty-nine dollars and seventy-eight cents, value received, at the office of Wycoff & Scrymser.

PHILLIPS & BUSSIER.

The defendants filed the following affidavit of defence:

"John Phillips, one of the defendants above-named, being duly sworn according to law, deposes and says that there is a defence in part to the claim of the plaintiff in the above action; the nature and character of which defence are as hereinafter set forth.

"On the 6th August 1838, the defendants purchased a quantity of walnuts, to wit, 201 bags, from the firm of Chamberlain, Broom & Co., at that time carrying on business in the city of New York, which firm was composed of William Chamberlain, Samuel Broom and——Lawrence. The purchase was made by sample, the article to correspond in description and quality with the walnuts exhibited as samples. The 201 bags of walnuts were shipped by the said Chamberlain, Broom & Co. to the defendants at Philadelphia, landed from the vessel and put in store. The defendants commenced making sales of the same in various quantities and to various individuals. After some sales had been effected, complaints were made by some, if not all of the purchasers, of the inferior quality of the nuts, and, in some instances, the same were returned to defendants on that account. An examination was then made of the whole parcel of nuts, when full one-half of the same proved to be rotten and worthless, and of a different mark from what was exhibited as samples at the time of the purchase. A demand was then made by this deponent in person, for an allowance on said bill of nuts, on said Chamberlain, as one of the firm of Chamberlain, Broom & Co., who stated that one of his partners, Mr Samuel Broom, was then absent in Europe, and when he re-

turned, if he, Broom, was willing, they would make the proper allowance; the samples having been shown by Broom. After receiving this assurance the matter rested until some time in February 1839, when a demand was again made for an allowance, but without success. This deponent avers that the defendants have not been able to dispose of more than one-half of said nuts. That about one-half of said 201 bags were not according to the samples produced, but were of an inferior quality and of different marks. That the same were not a sound and merchantable article, but rotten and of no value whatever. The loss sustained by the defendants they estimate at from $400 to $500, which sum they claim as a set-off against the demand of the plaintiffs in the above action.

"This deponent further states, that he was informed by the aforesaid William Chamberlain and others, that at the time the note on which suit is brought was given, the firm of Lawrence & Robinson, to whom the note was given, consisted of the aforesaid —— Lawrence, —— Robinson, and the aforesaid William Chamberlain. And he has also been informed, and verily believes, that before the commencement of this suit, said Robinson ceased to have any interest in said note, having retired from said concern, and the partnership of Lawrence & Robinson having been dissolved before the maturity of said note, said Robinson has in fact stated, within five days, that he knew nothing of any proceedings on said note.

"He further states, that he has been informed and verily believes, from inquiries made since the commencement of this suit, that the parties interested at this time and at the commencement of this suit, in the note on which the action is founded, are the said —— Lawrence, one of the above-named plaintiffs, the aforesaid William Chamberlain, and Samuel Broom, being the same parties who composed the firm of Chamberlain, Broom & Co., from whom the said parcel of nuts was purchased; said Robinson not being in any way interested in said note, although his name is used as one of the nominal plaintiffs."

The court entered judgment for the plaintiffs for want of a sufficient affidavit of defence, and damages were assessed at $1553.72.

Errors assigned:

1. In entering judgment for want of a sufficient affidavit of defence, when there was a sufficient affidavit of defence on the record.

2. In deciding that the facts set forth in the affidavit of defence, were not sufficient to entitle the defendants below to a trial by jury.

3. In deciding that the facts stated in the affidavit of defence would not, if proved before a jury, have been a full defence to this suit.

*Meredith,* for the plaintiffs in error, contended that the court

below erred in entering judgment, by which the claim of the defendants to a set-off was rejected, when they were entitled to go into it before the jury as a defence. It is not such a case of unliquidated damages as is inadmissible as a set-off; for the demand being founded on a warranty, arises *ex contractu,* and there is a measure of damages, viz., the difference between the price paid and the value of the article delivered in an unsound state. There is no reason why such a defalcation should not be allowed under the Act of 1705; and the cases of *Steigleman* v. *Jeffries,* (1 *Serg. & Rawle* 477); *Bayne* v. *Gaylord,* (3 *Watts* 301); and especially the case of *Nickle* v. *Baldwin,* (4 *Watts & Serg.* 290), go to sanction it.

*Guillou,* contra. The rule uniformly received is, that only demands for damages arising out of the same transaction are the subject of defalcation, and not those which are founded on a distinct and independent bargain. There must be an immediate connection with the plaintiff's cause of action. *Gogel* v. *Jacoby,* (5 *Serg. & Rawle* 122); *Dunlop* v. *Speer,* (3 *Binn.* 169); *Heck* v. *Shener,* (4 *Serg. & Rawle* 260); *Foster* v. *Bell,* (2 *Miles* 399). Here the alleged bargain about the walnuts had no connection whatever with the note on which the present suit was brought. In *Bayne* v. *Gaylord* the extra work was thrown out, and the decision went on the claim for the original work. The decision in *Nickle* v. *Baldwin* turned on the Act of 20th March 1810, which requires a set-off by the defendant before a justice of the peace of all "damages on assumption."

The opinion of the Court was delivered by

KENNEDY, J.—The defendants below are the plaintiffs in error, and offered, as a defence to a part of the plaintiffs' claim, to defalcate a demand which they, as appears by the affidavit of one of them, filed in the action as a defence in part to the plaintiffs' claim, alleged they had against the plaintiffs, arising out of a contract made and executed by and between them, whereby the plaintiffs sold and delivered to the defendants, in the month of August 1838, 201 bags of walnuts, warranting them to be of a quality equal to samples thereof shown at the time. The defendants, however, by the affidavit filed, allege that about one-half of the walnuts so sold and delivered were of an inferior quality to that of the samples, also of different marks from the samples, and in short that they were rotten and of no value whatever; by reason whereof they, the defendants, sustained a loss equal to from $400 to $500. The court below were of opinion that the demand or claim thus set up by the defendants below against the plaintiffs there, could not be set off or defalcated under our Defalcation Act, and accordingly rendered a judgment against them for the whole amount of the plaintiffs' demand. In this it is alleged that the court erred. The

[Phillips v. Lawrence.]

only question, therefore, which presents itself, is, whether the defendants had not a right to set off their demand against the plaintiffs on account of their having delivered to them under the contract for the sale thereof, walnuts of an inferior quality and greatly less value than what, by the terms of the contract, they had undertaken and bound themselves to do.

In order to determine this question, it is proper to refer to the terms of the Act for defalcation, which are, that "if two or more dealing together be indebted to each other upon bonds, bills, *bargains,* promises, *accounts,* or *the like,* and one of them commence an action in any court of this Province (Commonwealth), if the defendant cannot gainsay the deed, *bargain* or *assumption* upon which he is sued, it shall be lawful for such defendant to plead payment of all or part of the debt or *sum* demanded, and give any bond, bill, receipt, *account* or *bargain* in evidence, &c." Now, that the demand of the defendants against the plaintiffs is founded upon a bargain alleged to have been made between them, is clear from the terms of the affidavit of defence, and therefore within the express terms of the Act; so that one might naturally be led to conclude that the defendants' demand came within the spirit and meaning of the Act, as well as the letter of it, unless indeed it should be found from experience to be impracticable to give to the Act such an operation, or be found contrary to the general purport of the Act as expressed in the other parts of it. But this has not been shown, and, I think I may add, not even attempted. The only objection made is, that the claim of the defendants sounds wholly in damages of an unliquidated nature. If by this it is meant that the damages claimed by the defendants of the plaintiffs for the breach of their contract of warranty, are not such as may, and I will say, must be ascertained by the jury from evidence to be adduced by the defendants, showing the amount of their loss in dollars and cents, as it were, the objection is not correct; for it will be necessary that the defendants prove to the satisfaction of the jury the actual amount of their loss, and what it is equal to in dollars and cents; beyond the amount so proved, the jury cannot go or allow the claim of the defendants. The value or amount of the loss in such case may be quite as easily ascertained by a jury from the evidence with exactness, as the value of goods sold and delivered upon an *account* in *assumpsit* to recover what they may be proven to be reasonably worth; yet I apprehend that no person would say that a claim for the price of the goods in this latter case could not be set off by the seller in an action brought against him by the vendee on a bond, bill or note. For a claim upon an *account* is expressly recognised and mentioned in the Act.

The case, then, under consideration is clearly "a case of damages," as Mr Justice SERGEANT well observes in *Nickle* v. *Baldwin,* (4 *Watts & Serg.* 292), "arising *ex contractu,* capable of liqui-

VI.—20

[Phillips v. Lawrence.]

dation by a legal standard, and therefore falling within the Defalcation Act, as well as within the express language of the 7th section of the Act of the 20th of March 1810, by which the defendant is required, in a suit before a justice of the peace, on pain of being for ever barred, to set off his demand, whether founded on bond, note, penal or single bill, writing obligatory, book account, or *damage on assumption*." Indeed, it is plain that the decision of the case just referred to, and the principles laid down in it, rule and govern the present case. It may be that that case was considered as coming more directly under the provisions of the 7th section of the Act of 1810; but then it serves to show clearly the extent to which the Legislature considered that the right of set-off might be carried in all cases; and that if a defendant in a suit brought against him before a justice of the peace did not choose to exercise or avail himself of it, he should for ever thereafter be debarred from recovering such claim as he was allowed to set off. Wherever the nature of the case is such that a jury, in assessing damages in favour of the party claiming them, are fairly at liberty to take into consideration the mental suffering of such party produced by the conduct of the opposite party, or with a view to promote the peace and quiet of society, and to protect every one in the full enjoyment of his rights, they are at liberty to give vindictive or exemplary damages, the damages in such cases may with propriety be called unliquidated, and may perhaps be considered the subject of set-off under our Defalcation Act; but of this I do not wish to be understood as giving any definitive opinion. But I can entertain no doubt that the Defalcation Act allows a defendant to set-off a demand such as the defendants allege they have in the present case against the plaintiffs, arising out of a bargain or contract, where, although the sum claimed, legally speaking, consists of damages, and cannot be reduced to certainty by the terms of the bargain itself, yet the law has fixed and given a standard by which it can be ascertained by a jury of the country. The thing is not only practicable, but it is just and equitable that it should be so; for there is no reason or justice in compelling a defendant to pay a debt or sum of money owing by him to the plaintiff, when the plaintiff is owing, at the time of suit brought, to the defendant, a debt or sum of equal or greater amount, or, if of less amount, without having it defalked. It may also be further remarked, that this construction of the Act naturally tends to promote the interest of the public, as well as that of the parties, by preventing a multiplication of suits, putting an end to litigation with as little delay as possible, and thus avoiding all that additional expense and waste of time that would otherwise be necessarily incurred.

Judgment reversed, and record remitted with a *procedendo*.