## Hunt *versus* Gilmore.

1. The Pennsylvania Act of 1705 (Defalcation) was before the British Statute of Set-off, 2 Geo. II., and is more comprehensive.

2. Unliquidated damages arising *ex contractu* from any bargain, may be set off under the Pennsylvania Defalcation Act, whenever they are capable of liquidation by any known legal standard.

3. Bayne *v.* Gaylord, 3 Watts 301, explained.

4. In an action on notes given for land agreed to be sold, the defendant could give in evidence damages arising from the failure of the plaintiff to keep his contract, and have a certificate in his favor for a balance found to be due.

November 10th 1868. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. READ and AGNEW, JJ., absent.

Error to the District Court of *Allegheny county :* No. 121, to October and November Term 1868.

This was an action of assumpsit, commenced March 21st 1854, by John Gilmore against David Hunt. The plaintiff's claim was on three promissory notes, dated February 11th 1848, payable in two, four and six months respectively, for $183.33 each. The defendant pleaded non assumpsit, &c.; also set-off, want of consideration, with leave, &c.; also a special plea that the notes were given in pursuance of an agreement with the plaintiff, dated January 21st 1848, in which it was recited that the plaintiff and defendant were owners in common of a tract of land, on which there was a coal-bank, railway, &c., and that in the course of their business, debts had been contracted for which judgment had been obtained, execution issued, and the land extended, and that a dissolution of partnership and concentration of the whole interest in one was desirable, &c.; that it was agreed that the plaintiff did thereby sell to the defendant all his right, &c., in said land, coal-bank, &c., Gilmore retaining the privilege of taking two boat-loads of coal; and in consideration the defendant agreed to pay the plaintiff $650, viz., $100 cash, and the remainder in three notes of equal amount at two, four and six months, to pay the liens, &c., and indemnify the plaintiff, &c.; the plaintiff to make a deed to the defendant on the payment of the $650. The plea then averred that the defendant had performed his part of the agreement, but the plaintiff had failed to perform his part, and had refused to give defendant possession of the land, &c., "to the great damage of the defendant, which he claims to have adjudged to him in this action," &c.

On the trial before Hampton, P. J., the plaintiff having given his three notes in evidence and rested, the defendant gave evidence to sustain his plea of set-off and special plea.

The court instructed the jury that by the terms of the agreement of 21st January 1848, Hunt was entitled to the exclusive

[Hunt v. Gilmore.]

possession of the premises, except so far as is therein specially provided in relation to the privileges of Gilmore to load two boat loads of coal, &c. And if the jury find from the evidence that Gilmore violated his part of the agreement by refusing to allow Hunt such possession, they might assess such damages as the evidence would warrant for such violation, and if the same exceed the amount of the notes, they might certify the balance in favor of the defendant; if less than the amount of the notes, then the plaintiff would be entitled to recover the balance due on the notes.

The jury, December 3d 1855, found for the defendant, and certified that there was due to him $450. The plaintiff moved for a new trial. The court overruled the motion, quashed the certificate finding $450, and directed judgment to be entered for the defendant. Judgment was entered August 24th 1868. The defendant took a writ of error, and assigned for error that the court did not enter judgment for the defendant for $450, as found by the jury.

*J. M. Kennedy*, for plaintiff in error.—In Bayne v. Gaylord, 3 Watts 301, on which the court below ruled the case, and Gogel v. Jacoby, 5 S. & R. 117, cited in it, the damages attempted to be set off arose in other transactions. In Heck v. Shener, 4 S. & R. 249, also cited in Bayne v. Gaylord, it was a scire facias on a mechanic's lien. When the set-off arises from the same transaction, it may be decided by the same jury either as an equitable defence or set-off: Shaw v. Badger, 12 S. & R. 275; Hubler v. Tamney, 5 Watts 51; Steigleman v. Jeffries, 1 S. & R. 477; Harper v. Kean, 11 Id. 280; Barron v. Harriott, 2 Penna. R. 154; Nickle v. Baldwin, 4 W. & S. 290; Phillips v. Laurence, 6 Id. 150; Carman v. Franklin Fire Ins. Co., Id. 155.

*Kirkpatrick & Mellon*, for defendant in error.—When it is apparent on the record that the plaintiff in error had no right to recover, the court will not reverse, although the defendant in error has not taken a writ of error: Maher v. Ashmead, 6 Casey 344; Clay v. Irvine, 4 W. & S. 232. The defendant below had no right to a certificate in this case: Bayne v. Gaylord, Heck v. Shaner, Gogel v. Jacoby, *supra;* McQuade v. Stewart, 12 Wright 198.

The opinion of the court was delivered, January 5th 1869, by SHARSWOOD, J.—The claim of the plaintiff below was on three promissory notes given by the defendant as part payment of the purchase-money of a colliery. The defence set up was that the plaintiff had violated his agreement by not delivering possession of the colliery according to its stipulations. This defence was not given under the pleas of non assumpsit or failure of consi-

deration, as it might have been according to Heck *v.* Shener, 4 S. & R. 249, and many other cases.    But there was a plea of set-off and a special plea setting out the demand for damages by the defendant for the breach of the contract.    No objection was made on the score of want of notice of set-off, if such notice were necessary under the special plea.    The question is, had the jury a right to find as they did a balance in favor of the defendant ?

Let us consider how this would have been if the claim of the plaintiff and the counter claim of the defendant had arisen from two separate and independent transactions.    It has been some-times broadly said in our books, following the wake of the English courts in the construction they have put on their statutes, that unliquidated damages cannot be set off.    It has been observed more than once, however, that our Act of Assembly was twenty-four years before the British statute of 2 Geo. II., and that the words of it are more comprehensive.    The British statute enacts, "that when there are mutual debts between the plaintiff and de-fendant, one debt may be set off against another."    It has been accordingly settled in that country that nothing can be set off but debts, demands for which debt or indebitatus assumpsit may be maintained : Howlet *v.* Strickland, Cowp. 56 ; Weigall *v.* Waters, 6 T. R. 488.

But the act about defalcation of 1705, 1 Sm. Laws 40, enacts "that if two or more dealing together be indebted to each other in bonds, bills, bargains, promises, accounts or the like, and one of them commence an action against the other, it shall be lawful for the defendant to plead payment of all or part of the sum demanded and give any bonds, bill, receipt, account or bargain as evidence."    The construction of our courts has accordingly been more liberal and it may be laid down as established, by a series of unshaken cases, that unliquidated damages, arising *ex con-tractu* from any bargain, may be given in evidence under our act. When the damages arise from a tort, they certainly cannot be allowed, and perhaps there may be cases of contract where the dam-ages are not capable of liquidation by any known legal standard, which are not within the spirit of the act : as, for example, breach of a contract of marriage.    In Nickle *v.* Baldwin, 4 W. & S. 290, the plaintiff sued on a book account.    The defendant offered to defalk a claim of damages arising from the violation of a contract by the plaintiff to saw certain logs for him.    The set-off was sustained. "The defendant," said Sergeant, J., "has a remedy in assumpsit for a breach of the contract of the plaintiff to saw these logs on the shares ; and in such an action the damages are, in a certain sense, liquidated ; that is to say, there is a measure within which they must be restrained.    For the defendant would not be per-mitted, in an action of assumpsit for the breach of the contract, to recover more than the loss he had sustained by that breach,

[Hunt v. Gilmore.]

which would be the value of his share of the logs sawed and delivered within a reasonable time according to the contract." So in Phillips v. Laurence, 6 W. & S. 150, it was held that damages arising from a breach of warranty of goods sold may be set off in an action on a note given on a different account. "Whenever," says Kennedy, J., "the nature of the case is such that a jury, in assessing damages in favor of the party claiming them, are fairly at liberty to take into consideration the mental suffering of such party produced by the conduct of the opposite party or with a view to promote the peace and quiet of society, and to protect every one in the full enjoyment of his rights, they are at liberty to give vindictive or exemplary damages, the damages in such case may with propriety be called unliquidated, and' may perhaps be considered (not) the subject of set-off, under our Defalcation Act; but of this I do not wish to be understood as giving any definitive opinion. But I can entertain no doubt that the Defalcation Act allows the defendant to set off a demand, such as the defendants allege they have in the present case against the plaintiffs, arising out of a bargain or contract, when, although the sum claimed, legally speaking, consists of damages, and cannot be reduced to certainty by the terms of the bargain itself, yet the law has fixed and given a standard by which it can be ascertained by a jury of the country." In like manner in Carman v. The Franklin Insurance Co., 6 W. & S. 155, it was held that in an action on a promissory note, the defendant was entitled to set off damages arising from the breach of an agreement to transfer certain policies of insurance which they held on his property as security in another transaction; and subsequently in Ellmaker v. The Franklin Insurance Co., 6 W. & S. 439, the action was by the insurance company on a covenant of guaranty of a certain bond and mortgage held by them, to which the defendant pleaded specially a set-off, a claim for damages arising from a loss by fire under a policy granted by the plaintiffs; on a demurrer to this plea the court below entered judgment for the plaintiffs; but that judgment was reversed in this court. Gibson, C. J., after referring to the fact that we have gradually enlarged the effect of our act for defalcation by discarding notions derived from the English statutes of set-off, till we have brought it to the line of the enactment, adds, " If an unliquidated claim demanded may be set off when it has sprung from the same transaction, and we have constantly ruled that it may, why may it not be set up when it has sprung from a distinct and independent contract ? The confusion incident to the trial of distinct issues in the same action is no greater when the demands are independent of each other than when they are connected, nor more embarrassing when they are indefinite than when they are liquidated; nor more complicated when they are set against each other than when they are joined

in the same declaration or in consolidated actions." The deter-
mination in this case was referred to with approbation in Long *v.*
The Penn Insurance Co., 6 Barr 424, and the principle again
affirmed and applied in Speers *v.* Sterrett, 5 Casey 192. I think
it clearly settled by this array of authorities that unliquidated
damages arising from a breach of contract can always be set off
when they are capable of liquidation by the application of any
known measure or standard. The defendant's claim in the court
below in this case was for damages for the breach of contract as
readily susceptible of liquidation as any of the cases which have
been decided. The measure, which the jury would in law have
been bound to apply, would be the advance he could have obtained
in the market for the property over and above the contract price.
In each of the cases which have been cited, the defence was admis-
sible as a set-off only under the Defalcation Act of 1705; and it
cannot be doubted that if in any of them a balance had been found
against the plaintiff, the defendant would have been entitled to a
certificate in his favor under that act, or now either a certificate
or a verdict under the Act of April 11th 1848, § 12, Pamph. L.
537, on which he can have judgment and execution without the
delay of a scire facias.

But if this would have been lawful when the claim of the plain-
tiff and the cross-demand of the defendant grow out of separate
and distinct transactions, *a fortiori* it ought to be so when they
both grow out of the same transaction. There is certainly nothing
in the words of the act to prevent it, and the symmetry of the
system imperatively requires it. Every reason which can be
imagined is in favor of the same jury passing on the whole case;
and many reasons which cannot be urged in the case of distinct
claims. Why should a defendant be precluded from taking such
a defence in an action growing out of the same cause, unless he
agrees to give up all claim he may have beyond the plaintiff's
demand, or be driven to another action for the surplus? It may
well be questioned whether, having availed himself of the breach
to defeat the plaintiff's action, he would be permitted to set it up
as the ground of a separate action to recover over and above what
the first jury had allowed him. Yet if he cannot, he must give
up the defence altogether and resort to a separate action. This
is certainly in the teeth of the policy of the statute. Suppose a
contract for the sale and delivery of one thousand bushels of wheat
at a certain price, for which a note is given, and the wheat is
never delivered at all. Is it possible that in an action on the note,
the defendant cannot show, not only that the plaintiff has no right
to recover, but that he, the defendant, has suffered damages by the
plaintiff's violation of contract for which in a separate action he
would be entitled to a verdict for damages? Must he be driven
to a separate action? No doubt, in such case, if the defendant

[Hunt v. Gilmore.]

pleads only the general issue, or payment with leave to give the special matter in evidence, and puts in no special plea or gives no notice of set-off, while he is entitled to take defence to the extent of the plaintiff's claim, he cannot go beyond it, and have a verdict or certificate in his favor. This will reconcile most of the cases which appear to be contradictory. Bayne v. Gaylord, 3 Watts 301, on the authority of which the learned judge below set aside the certificate or verdict for the defendant, was a scire facias on a mechanic's claim—a proceeding *in rem* in which it is not easy to see how there could be a certificate, and the case itself is expressly ruled on the authority of Gogel v. Jacoby, 5 S. & R. 117, which does not support it. In Gogel v. Jacoby, the evidence was rejected distinctly on the ground that the damages claimed arose from a tort, although it was agreed that if it had arisen in the same transaction as that out of which the plaintiff's demand arose, it would have been good as a defence to the extent of his demand. McQuaide v. Stewart, 12 Wright 198, is a case also which I have not overlooked in this investigation. That also was a scire facias on a mechanic's claim, there was no plea or notice of set-off and the demands offered to be defalked were not unliquidated damages in any sense. of the word, but a certain debt for rent. It has no bearing, then, on the question presented to us on this record. On the other hand, in Uhler v. Sanderson, 2 Wright 128, in which to an action upon a check, the defendant gave evidence by way of set-off of unliquidated damages arising from the violation of the contract in payment of which the check had been given, the defendant recovered a verdict for a large sum before Mr. Justice Strong at Nisi Prius, which, on certificate of error, was affirmed in this court. We are of the opinion that the court below erred in quashing the verdict for the defendants for the sum found by the jury.

> Judgment reversed, and now judgment on the verdict for the defendant for $450, with interest from December 3d 1855.

THOMPSON, C. J., dissented.