## Snyder *v.* Rainey.

*Practice—Appeals—Referee's findings of fact.*

A referee's finding of fact, based upon sufficient evidence and confirmed by the court below, that the minds of the parties had never met in a contract, will not be reversed by the appellate court, except for manifest error.

*Practice, C. P.—Set-off—Certificate for defendant—Defalcation act of* 1705.

In an action of assumpsit on an alleged contract, a plea of payment and

set-off by defendant and a claim for a certificate in his favor do not constitute an admission of the contract, nor estop the defendant to deny it; and the defendant may be entitled to the certificate in his favor although the plaintiff has failed to establish the contract alleged in the statement of claim.

Argued Oct. 31, 1900. Appeal, No. 132, Oct. T., 1900, by plaintiff, from order of C. P. No. 3, Allegheny Co., June T., 1898, No. 277, overruling exceptions to referee's report in case of William P. Snyder, trading as W. P. Snyder & Co., *v.* W. J. Rainey. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit on an alleged contract.

The defendant's pleas were non assumpsit, set-off and payment. Defendant in his affidavit of defense claimed a certificate in his favor against the plaintiff for $8,164.32.

The plaintiff filed a replication in answer to the claim for a certificate, denying any liability to defendant. By agreement of the parties the case was submitted to Joseph M. Swearingen, Esq., as referee.

The "statement of the question involved" in the plaintiff's paper-book was as follows:

1. As to what constitutes a contract: Defendant, by telephone, sold coke to plaintiff for shipment to fill a contract which plaintiff had with party at one place, then to fill contract which plaintiff had with party at another place. Defendant then prepared a writing, purporting to be a memorandum of contract, which plaintiff refused to sign, a dispute having arisen regarding shipment to second place. Defendant began delivery and insisted upon continuing it until delivery was completed at first place. Dispute was then adjusted and defendant began and continued delivery at second place, but quit before delivery was completed.

2. Whether defendant, having gainsaid contract, can claim set-off under defalcation act of 1705.

The referee found as a fact that the contract alleged in the statement of claim had not been made. The referee reported a certificate in favor of the defendant and against the plaintiff for $9,378.12.

Exceptions to the referee's report were dismissed by the court in an opinion by Slagle, J.

*Errors assigned* were in dismissing exceptions to referee's report, and ordering judgment to be entered for the defendant on the certificate.

*Walter Lyon,* with him *Charles H. McKee* and *H. Walton Mitchell,* for appellant.—The defendant had no right to the certificate: Anderson v. Long, 10 S. & R. 62; Waterman on Set-off, sec. 1; Claridge & Rudolph v. Klett & Co., 15 Pa. 259.

*George B. Gordon,* with him *W. B. Sanders, John Dalzell* and *William Scott,* for appellee.—The general principle of law established by this court is, that where there is a finding of fact by a referee which has been confirmed by the court below, it has all the force of a verdict of a jury, and must prevail unless error is clearly shown: Old Colony Trust Company v. Allentown, etc., Transit Co., 192 Pa. 596; Scott v. Scott, 196 Pa. 132; Hotchkiss v. Roehm, 181 Pa. 65; Ridge Ave. Railway Co. v. Philadelphia, 181 Pa. 592; Bruch v. Philadelphia, 181 Pa. 588; McClure v. The Times Publishing Co., 169 Pa. 213.

From time immemorial it has been customary in Pennsylvania to plead both negative and affirmative pleas, and we doubt whether there ever was a case tried where a set-off was claimed in which the plaintiff did not plead non assumpsit as well as set-off and payment; and we think that no Pennsylvania practitioner has ever dreamed that when he pleads set-off he admits the alleged promise upon which his clients are sued in the manner and form in which it is laid in the plaintiff's statement.

At all events, negative defenses have frequently been set up, coupled with the claim that a set-off and certificate be allowed: Hunt v. Gilmore, 59 Pa. 450; Gable v. Parry, 13 Pa. 181; Frame v. William Penn Coal Co., 97 Pa. 309.

OPINION BY MR. JUSTICE BROWN, January 7, 1901:

We have carefully reviewed all the testimony in this case, oral and written, and a discussion of it would have no proper place here. The main question was one of fact, and the learned referee found that the minds of the parties to the contention, having been clouded with misunderstandings, had never met in a contract and that no such agreement, as is relied upon by the plaintiff, had been entered into by the defendant. He, there-

fore, found that the former, having received coke from the latter, not under a contract nor at contract prices, was indebted for it for what it was reasonably worth under an implied promise that it would be paid for. It is all sufficient for us to say we have not been persuaded that the referee erred in his findings of fact, confirmed by the court below, from which he concluded that "there was no definite and subsisting contract between the plaintiff and defendant;" on the other hand, with the evidence before us, his findings and conclusions are ours, that the plaintiff is indebted to the defendant for the amount of the judgment entered against him. The only question is whether it can be recovered under the certificate returned, that the former is so indebted to the latter.

The appellant relies for recovery against the appellee upon a contract set forth in his statement, and contended below, as he insists here, that the defendant having, under his pleas of payment and set-off, claimed a certificate in his favor under the defalcation act of 1705, is estopped from gainsaying or contradicting the contract as laid in the narr. That act provides: "If two or more dealing together be indebted to each other upon bonds, bills, bargains, promises, accounts or the like, and one of them commence an action in any court of this province, if the defendant cannot gainsay the deed, bargain or assumption upon which he is sued, it shall be lawful for such defendant to plead payment of all or part of the debt or sum demanded, and give any bond, bill, receipt, account or bargain in evidence; and if it shall appear that the defendant hath fully paid or satisfied the debt or sum demanded, the jury shall find for the defendant, and judgment shall be entered, that the plaintiff shall take nothing by his writ and shall pay the costs. And if it shall appear that any part of the sum demanded be paid, then so much as is found to be paid shall be defalked, and the plaintiff shall have judgment for the residue only, with costs of suit. But if it appear to the jury that the plaintiff is overpaid, then they shall give in their verdict for the defendant, and withal certify to the court how much they find the plaintiff to be indebted or in arrear to the defendant, more than will answer the debt or sum demanded, and the sum or sums so certified shall be recorded with the verdict, and shall be deemed as a debt of record." No objection was made by the plaintiff to this claim

of the defendant for the certificate, but it rather seems to have been willingly received by the former as a trap for the latter, set by himself. As the right of a defendant to a certificate in his favor exists only under the statute, its words, " If the defendant cannot gainsay the deed, bargain or assumption upon which he is sued," etc., are read to us as conclusive, that under the pleas of this defendant and his claim for a certificate in his favor, he admits the contract or assumption upon which he is sued and is estopped to deny it. In passing upon this question the referee said : " The defalcation act would bear the construction for which plaintiff's counsel contend, if interpreted according to the strict letter. And it might be so construed if the act were now for the first time under consideration. But the act does not appear to have been so understood by the profession or by the courts. Besides, to give the act the construction for which the plaintiff's counsel contend would limit its application very largely. Now the purpose of the act certainly is to avoid circuity of actions. It ought to be construed so as to give effect to that purpose. Such is the construction which it appears to have received by Justice GIBSON in Calvin v. Mc-Clure, 17 S. & R. 385, where the plaintiff declared in assumpsit and the defendant pleaded non assumpsit and payment. There was not only a verdict in favor of the defendant, but also a certificate in his favor against the plaintiff ; and this was sustained. See also Hunt v. Gilmore, 59 Pa. 450. As has been stated, the great purpose of the act is to avoid multiplicity of suits. Its provisions are therefore to apply not merely when a defendant in the pleadings admits the contract upon which he is sued, but also whenever, after trial, it appears that the plaintiff's cause of action must be admitted. In other words, it is for the court and jury to determine whether or not the contract, upon which the defendant is sued can be ' gainsaid ' and that only after trial. It is not a question of pleadings or evidence either, but it is a question for investigation upon all the evidence, and is to be finally decided by the case as disclosed at the trial." The court below adopted the same view and we cannot express a different one.

The referee found that the plaintiff had no cause of action, and the dictum of COULTER, J., in Claridge & Rudolph v. Klett & Co., 15 Pa. 259, that " there can be no set-off when the plain-

tiff has no cause of action " is cited in support of appellant's construction of our defalcation act; but in the earlier case of Lewis's Executrix v. Culbertson, Admr., 11 S. & R. 58, in which the very question was raised whether a defendant can give a set-off in evidence when the plaintiff has not supported his claim, DUNCAN, J., in reversing the court below and sending the case back, that the defendant's evidence might be received, says what has ever since been recognized by every practitioner and all our courts as the correct interpretation of the act of 1705 : " But the rejection of the evidence must have been founded on this, that the plaintiff not having substantiated any demand, there could be no counter-demand. There was no room for defalcation, because there was nothing from which it could be defalked ; there could be no set-off, because there was nothing from which to deduct it. All this may be right under the British defalcation acts, where there cannot be any sum recovered by the defendants ; the defendant's counter-demand would not be received in evidence, because he could gain nothing by it ; it would be useless then to proceed further. But under the defalcation act of 1705, the provision goes much further : 'If it shall appear to the jury that the plaintiff is overpaid, they shall give a verdict for the defendant, and certify how much they find the plaintiff is in arrear to the defendant, which shall be recorded with the verdict, and shall be deemed a debt of record.' Under this act, the defendant, where his demand overruns that of plaintiff, is the actor, the law gives him his election, either to bring his action or set it off ; he makes election." The construction contended for would defeat the very purpose of the act, which has been declared, time and again, to be the prevention of the multiplicity of suits between the same parties. In speaking of the liberal construction given it, the words of TILGHMAN, C. J., in Steigleman v. Jeffries, 1 S. & R. 477, fit the case at bar : "Where the cause of action which the defendant wishes to set off, arises from the same transaction on which the plaintiff founds his action, there is great convenience in having both decided by the same jury. It saves expense, avoids multiplicity of suits, and can do no injury to the plaintiff ; because, having received notice by the defendant's plea, he may defend himself with as much advantage in that form, as if he answered to an action brought on the warranty." "Suppose a contract for the sale and de-

livery of one thousand bushels of wheat at a certain price, for which a note is given, and the wheat is never delivered at all. Is it possible that in an action on the note, the defendant cannot show, not only that the plaintiff has no right to recover, but that he, the defendant, has suffered damages by the plaintiff's violation of contract for which, in a separate action, he would be entitled to a verdict for damages? Must he be driven to a separate action?" SHARSWOOD, J., in Hunt v. Gilmore, 59 Pa. 450.

No one of us can recall the time when to a plea of non assumpsit were not added payment and set-off. Under these pleas the plaintiff has always been required to make out his case; no admission of the contract or assumption sued upon has ever been presumed, and whether the plaintiff made out his case or failed, the right of the defendant to a certificate in his favor, if justified by the evidence, has never been questioned. This act of 1705, now old with us, has been so read for nearly two centuries; and as so interpreted for these many years we will still so construe it. " And surely the uniform practical interpretation of a law for near two centuries, is an argument that is worth more than hours of refined criticism and analysis of its phraseology. It is the expression of the common sense of the country, and therefore the argument which common sense most readily appreciates. . . . Usually, the best argument in favor of a given interpretation of an old law, is to point to the usages of the country in its favor. Minds respectful of society admit such arguments cheerfully. Minds that have no such respect need to be educated over again, rather than argued with: " Com. v. Nesbit, 34 Pa. 398.

The judgment is affirmed.