## Producers Coal and Coke Company v. Moyer.

*Frank P. Barnhart* and *H. L. Walters*, for plaintiffs.
*Scheeline & Smith*, for defendant.

CHASE, P. J., 46th judicial district, specially presiding, Oct. 11, 1929.—The plaintiffs bring an action of *assumpsit* to recover for coal alleged to have been sold and delivered to the defendant. The defendant, in reply, sets up set-off to the claim, alleging that the defendant purchased two cars of coal and consigned the same to H. C. Butterbaugh Company, Fonda, New York; that when the said cars were *en route*, the plaintiff, representing that it had authority in the premises, induced the carrier, the Pennsylvania Railroad Company, to reconsign the said two cars of coal; that such reconsignment was made for the benefit of the plaintiff; that the fair market value of the coal illegally taken was $441, and this set-off in this action is claimed under an implied contract to pay for the same.

The plaintiffs file a statutory demurrer alleging that the set-off or counter-claim cannot be set up in this action as against the plaintiffs' claim, inasmuch as the alleged set-off grows out of a separate and distinct transaction, which in no way bears any relation to the transaction out of which the plaintiffs' demands grew, and that it being a separate and distinct transaction and the alleged set-off being the result of a tortious act of the plaintiff, the set-off cannot be permitted.

Upon the other hand, the defendant contends that, although the act on which the set-off was based was the result of the tortious conduct of the plaintiffs, the property having been seized and disposed of, the defendant would have the right to waive the tort and sue in an action of *assumpsit* under an implied contract to pay for the property alleged to have been wrongfully taken.

It is a well-established principle that set-off will not be permitted in an action of *assumpsit* for a tortious act, unless the alleged set-off grows out of

the contract or obligation on which the plaintiff alleges the right to recover. It is not contended by the defendant in this proceeding that that is not the law. However, it is contended that where a set-off is claimed, growing out of a separate and distinct transaction from that on which the plaintiff bases his rights of recovery, if the alleged set-off is the result of a tortious act wherein the tort could be waived and the defendant could sue in *assumpsit* on an implied contract, the law will permit the setting up of the set-off or counter-claim. It is a well-recognized principle of the law, which needs no authority, that where it is possible, as between litigants, to have their differences adjudicated in a single action, the same should be done in order to avoid a multiplicity of actions.

In disposing of the issue raised in the demurrer, it first must be determined whether, under the facts as alleged, the defendant could sue in *assumpsit* for the two cars of coal alleged to have been wrongfully taken. In the case of Deysher *v.* Triebel, 64 Pa. 383, Mr. Justice Sharswood uses the following language, quoting from Mr. Leigh: "Where the defendant has received goods wrongfully, a contract for the purchase will be inferred and the plaintiff may waive the tort and recover the amount in an action for goods sold and delivered." Still further, it has been said that if the goods were of such a character that the defendant, after conveying them to his own use, had consumed them, a plaintiff might maintain an action of *assumpsit* for the price. And further, it appears that where one has voluntarily put himself in the attitude of one who has acquired the lawful title to the property by purchase, there is no reason why the law should not thereupon raise a promise on his part to pay for it. And it seems that where the right to sue in *assumpsit* lies by waiver of the tort, the same could be set up in set-off or counter-claim, if the damages were capable of liquidation. In the case of Groetzinger *v.* Latimer, 146 Pa. 632, the court, quoting from Justice Woodward in the case of Ahl *v.* Rhoads, 84 Pa. 319, says: "It was said by Justice Woodward 'the right of a defendant may be regarded as established to set off against a plaintiff's demand any damage capable of liquidation and for which an independent action *ex contractu* could be maintained. This may be stated as a general result of the authorities extending especially from Nickle *v.* Baldwin, 4 W. & S. 290, to Hunt *v.* Gilmore, 59 Pa. 450.'"

We would gather from these authorities that where the tort may be waived and action brought in *assumpsit*, the cause would be permitted to be set up as a set-off or counter-claim, if the damages were capable of liquidation. In the case of Hunt *v.* Gilmore, 59 Pa. 450, 454, Justice Sharswood, speaking for the court, says: "I think it clearly settled by this array of authorities (citing the authorities therein) that unliquidated damages arising from a breach of contract can always be set off when they are capable of liquidation by the application of any known measure or standard." In the matter before the court it seems that the measure of damages is readily susceptible of liquidation in the alleged set-off, it being the market value of the coal alleged to have been wrongfully taken. We are, therefore, of the opinion that, under the law, the set-off herein alleged is permissible under the authorities, and the court will make the following order:

Now, Oct. 11, 1929, the demurrer to the set-off or counter-claim by the plaintiff is dismissed and the plaintiff is ordered and directed to file an answer to the same within twenty days from the date of this order. Exceptions noted and bill sealed to the plaintiff.

From John M. Urey, Clearfield, Pa.