In the matter of Wakker.

---

---

New-York General Term, May, 1848. *Hurlbut, Edmonds, and Edwards*, Justices.

## In the matter of Philip Wakker.

The act of March 30, 1848, relative to justices' and police courts in the city of New-York, is not unconstitutional.

Where the warrant on which a prisoner has been arrested was issued by a person who was acting as a police justice *de facto*, under color of an election, in pursuance of an act of the legislature, this is sufficient, on *habeas corpus*, to justify the court in determining whether the prisoner is rightfully held in confinement; without going into the inquiry whether the magistrate was a police justice *de jure*. *Per* Edmonds, J.

<hr>

In the matter of Wakker.

<hr>

Although the writ of *habeas corpus* may sometimes, with propriety, be used as a writ of error, yet *it seems* that it cannot be converted into a *quo warranto*, in order to determine a question of usurpation of office. *Per* EDMONDS, J.

HABEAS CORPUS. Under the act of March 30, 1848, entitled "An act in relation to justices and police courts in the city of New-York," (*Laws of* 1848, *p.* 249,) Jeremiah Lothrop was elected a police justice. The prisoner, Philip Wakker, was arrested upon a warrant issued by the said justice, charging him with the commission of a crime, and was brought before him for examination. Thereupon Wakker sued out a writ of habeas corpus, returnable at the present term of this court, for the purpose of obtaining his discharge, on the ground that the act of the legislature under which Lothrop was elected, and claimed to hold his office, was unconstitutional, and conferred no authority upon him to proceed against the prisoner.

*L. B. Shepherd & D. Graham, Jun.* for the prisoner, insisted that the law under which Lothrop was elected was unconstitutional; for the reason that it was a local act, and embraced two distinct subjects, viz. the marine and justices' courts, both of which were not expressed in the title; contrary to the provisions of article 3, section 16 of the constitution of 1847, which declares that "no private or local bill which shall be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." And they insisted that for this reason the whole act was void,

*D. D. Field & C. O'Conor*, for the people, denied that the act in question was a local act, in the sense of the constitution; or that it embraced two subjects, even if it were a local bill. They insisted that it contained but one subject, viz. the inferior local courts in the city of New-York. That the marine court was within the generic name of justices' courts, and had always been considered a justice's court, and so treated by various acts of the legislature. That those clauses of the constitution which relate only to the manner of doing business, by the legislature, are merely directory, and not mandatory. That the section in

In the matter of Wakker.

question ought, from a sort of public necessity, and from every consideration of policy, to be considered merely directory, and not prohibitory, and therefore as constituting only an imperfect obligation, not to be enforced by the courts

HURLBUT, P. J. If the statute, the constitutionality of which was the main subject of the argument in this case, appeared to embrace two distinct subjects, contrary to the provision of article 3, sec. 16, of the constitution of this state, it would be necessary for us to determine two important questions, which were elaborately discussed at the bar ; to wit—Whether the section of the constitution referred to, is to be regarded as containing an express prohibition, which would render void any act of legislation done in violation of it ; or whether it is to be construed as merely directory to the legislature, and binding on the consciences of its members, but of imperfect legal obligation, and conferring no power on the judiciary to enforce it as a part of the fundamental law of the state. And if we determined to give full effect to this provision, as a constitutional prohibition, then we should have to consider whether the statute under consideration is a " local" act within the meaning of the constitution.

But it seems to us that we are not required to decide either of these questions in the present case ; because if both of them should be determined in favor of the petitioner, he would still have to satisfy us, that the act " in relation to justices' and police courts in the city of New-York," was passed in violation of the clause of the constitution referred to. Now in the enactment of this statute it is not perceived by us that more than one subject engaged the attention of the legislature. It was the object of this law to establish justices' courts of civil and criminal jurisdiction within this city, and to abolish such minor jurisdictions as stood in the way of the courts to be created. The well known jurisdiction of justices of the peace for the country, is divided by this statute, between the new justices created by it ; upon one set of whom is conferred the civil, and upon the other the criminal jurisdiction of the country magis-

trates.   The office of justice, its tenure and jurisdiction, and the compensation of its incumbents, are provided for; and clerks are ordered, and compensated, by this law.   So far no duplicity appears.

But it was urged, on the argument, that the 9th section of this statute, which declares that its provisions shall be applicable to the justices and clerk of the marine court, introduces matter into this act which is foreign to its main design, and which is not expressed in its title.   This section relates to the mode of compensating the justices and clerks, and requires that they shall account to the common council of the city for all fees and perquisites received by them, by virtue of their offices.   So far as the provisions of this section relate to the justices and clerks created by this law, it is not pretended that they are foreign to the main design of the statute; but it is urged that the provision respecting the justices of the marine court, is wholly foreign to the object and title of the statute, because it is claimed that that court is not a justice's court.   We think otherwise   Independently of the argument to be derived from the circumstance that by various statutes of this state, the magistrates officiating in that court have been denominated justices, and that they have been included in general statutes regulating courts of justices of the peace, it would seem from the nature and extent of the jurisdiction of that court, its process and forms of procedure, as well as the mode of correcting its errors, that no term so well expresses the idea of that tribunal, as that of "justice's court." It is true, that it entertains jurisdiction of a class of marine cases not cognizable by the latter court; but it would be giving an undue importance to this one feature in respect of jurisdiction, to hold that this alone deprived it of the character of a justice's court, while it possessed all the main characteristics of that tribunal.   It is still a court of inferior and limited jurisdiction, conducting in all respects material to this argument as a justice's court.   If this be correct, then, in the strictest construction of the article of the constitution under consideration, a statute "in relation to justices' courts," confined to the organi-

In the matter of Wakker.

zation and regulation of these courts, may properly embrace in its provisions the marine court of the city of New-York.

We hold to a more liberal interpretation of this clause of the constitution than that contended for by the learned counsel for the petitioner; since such interpretation can obtain, and all the evils which it was the object of this section to prevent, can at the same time be avoided. We do not occupy narrow and technical ground, when called upon to interpret a provision of the fundamental law of the state. If it has restrained the exercise of legislative power in a particular instance, we may be sure that this is the result of the former abuse of power in the same instance by the legislature.

Thus are the examples before us; from which we can clearly perceive the ground and reason of the constitutional prohibition. In the present case these examples are numerous, and enter as well into the general as the private statutes of the state; in the former, producing at least great inconvenience, and in the latter often exhibiting cases of mistake and error, if not of corruption. But it is only where the subjects embraced in the same statute are not expressed by its title, and have no congruity or proper connexion, that the evils sought to be prevented by this section of the constitution can arise.

The statute under consideration is free from all difficulty of this sort; it embraces but one subject, and that is fairly expressed by its title.

The prisoner must be remanded, &c.

EDWARDS, J. concurred.

EDMONDS, J. Fully agreeing with my brethren in the disposition they make of this case, and in the reasoning which has led to it, I nevertheless feel myself called upon to notice another topic which was only partially considered on the argument; the manner, namely, in which this question has been brought before the court.

I suggested, during the argument, my doubts whether the question raised on this return could properly be considered or

In the matter of Wakker.

disposed of in this form; and whether it was not enough to enable us to decide the case, that the warrant under which the prisoner was held, had been issued by one who was acting according to law as a police justice *de facto*, and whether we were not bound by that, until he should be, in due form of law, declared not to be one *de jure*.

The counsel on both sides seemed anxious to have the question disposed of, even in this summary mode; and only one of them favored the court with an attempt to solve what was suggested as a grave doubt in the case. My reflections and examination of that part of the case have by no means removed that doubt; and I deem it necessary to notice it, lest our silence should hereafter be construed into a sanction on our part, of the exercise of a very questionable jurisdiction.

The practical effect of allowing such a practice to grow up might be to allow every felon, from the moment when suspicion first attaches to him, until the final execution of his sentence, to test on habeas corpus, in a summary way, every step of his progress by the provisions of the constitution, so as to see if perchance he may not escape the consequences of his crime, on some point unconnected with his guilt or innocence. The welfare and good order of society, and the proper administration of justice may, on the other hand, require him to be bound, at least in the first instance, by the acts of those officers of justice, who are acting in obedience to the unequivocal provisions of a law of the state. At all events the question is of too grave a character to be passed over in silence, or to receive any indirect determination, by an omission on our part to reserve it, in its full vigor, for the proper occasion.

The whole tendency of all legislation, as well as of litigation, is to summary proceedings, as thereby the cases which are susceptible of obtaining that character, obtain a preference in hearing over other cases. This may be quite desirable amid a vast amount of business, which neither the bench nor the bar are physically capable of dispatching with promptitude, and may answer very well for the preferred cases, as long as their number continues small. What it will be, by and by, when

In the matter of Wakker.

all cases shall take this summary character, it will not be diffi-
cult to divine.   In the mean time, all who are interested in
maintaining the supremacy of the law are admonished to take
care lest that which is Heaven's first law—order—be expelled
from the tribunals whose peculiar province it is to administer
justice among men.

The present case is an apt illustration of this danger.   The
only parties who have a right to appear before us on this writ
are the prisoner and the people, through their respective coun-
sel, to determine simply the question whether the prisoner is
rightfully held in confinement.   To him the question is of very
little consequence ; for if we should hold this warrant to be void,
it would still be our duty to inquire into his guilt ; and if we
found cause for the charge against him, forthwith to remand
him.   (2 R. S. 568, § 43.)   So that all he is to gain is the
privilege of coming out of his prison occasionally, and witness-
ing this argument.

On the other hand, to the public prosecutor it seems to be
a matter of equal indifference.   No notice seems to have been
given to the district attorney, as required by the statute; nor
does he take any part in the discussion.   But those who stand
in the position which he would occupy, speak of themselves,
one of them at least, as counsel for the magistrate !   So that
we have the spectacle exhibited of a judicial officer, who ought
to have no interest in the results of his official action, and whose
whole duty is comprised in an inquiry into the truth of the
charge against the prisoner, and a committal thereon, actually
employing counsel to appear in the highest criminal tribunal
of the state, to enforce the continued confinement of the pris-
oner, whose case he has judicially passed upon ; and that not
so much because the prisoner is guilty, as because the magis-
trate is interested in the question of law mooted in the case.

I do not speak of this as matter of censure of that officer,
but as an inevitable result of the position in which he was
placed, and of the practice which we are called upon to sanc-
tion.   If we do sanction it, the same spectacle must be fre-
quently exhibited in this court.   Already one of the civil jus-

tices, who is interested in the same question, has proposed to issue a warrant against somebody to have his question also brought up.

Nay, why may not our action be so drawn into a precedent, as by and by to cause some justice to employ counsel to appear in his own tribunal against some suitor there, and point to our toleration of the practice as his sanction ? This may be an extreme case, but it is worth our while to see where the practice may lead us, before we sanction it, even by our silence.

Another mischief is that the proceeding does not determine the question in dispute. It does not settle the law ; the decisions of this court lose their binding force ; and litigation will be encouraged, rather than diminished, by our thus yielding to the impatience of the parties interested.

Neither of the contending justices being parties to this proceeding, they will not be bound by our decision. As to them it cannot be pleaded as *res adjudicata.* They may hereafter litigate the matter as much as if we had never considered it. None of the present inmates of the prison, except Wakker, are parties to this proceeding, or bound by our decision upon it. And they too may litigate it as much as they please, notwithstanding our decision.

So that although we have listened to learned and interesting arguments from eminent counsel, on a grave constitutional question, and have ourselves seriously considered it, the whole effect of our decision will be that Philip Wakker must go back to jail. I cannot, for one, consent thus to trifle with the adjudications of a court which has for more than a century been settling the law of the land, and whose province it is to superintend all inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which they have been invested. And this not only by restraining their excesses, but also by correcting their negligence and obviating their denial of justice. (3 *Bl. Com.* 110.) In fine, no one but Wakker will be bound by our decision, yet of all the parties engaged in the controversy he seems to have least interest in the result.

In the matter of Wakker.

The writ of habeas corpus was invented for a very different purpose, and has a very different office, from that assigned to it on this occasion. It may sometimes with propriety be used as a writ of error, but I am yet to learn that it can ever properly be converted into a *quo warranto*. The habeas corpus is a writ of right, to which every person is entitled, *ex merito justiciæ*. The quo warranto can be sued out only by the attorney general; and it is at his option whether he will give any party the benefit of it. The habeas corpus is an efficacious remedy against the abuse of the right of personal liberty—emphatically the stable bulwark of civil liberty. An information in the nature of a quo warranto is filed when any person shall usurp, intrude into, or unlawfully hold or exercise, any public office, &c. Yet in this case, under the pretence of relieving against an abuse of the right of personal liberty, the court, by means of a writ which it is compelled to allow, is called upon to determine a question of usurpation of office, which the attorney general may consider as too clear to justify his interference; or which, for aught we know, he may already have definitely acted upon. And to do that, we are to take the consent of both the contesting parties in this argument—a consent not binding on either of them elsewhere—that Kent was wrong in laying it down in his commentaries, (2 *Com.* 295,) that in the case of public officers who are such de facto, acting under color of office by an election or appointment, not strictly legal, their acts are valid as respects the rights of third persons who have an interest in them, and *as concerns the public, in order to prevent a failure of justice*. And that he was equally wrong when, as chief justice, in answer to a proposition that an officer *de facto* is one coming into office by color of election, and that all his acts are good until he is removed, he remarked that that law was too well settled to be discussed. (*The People* v. *Collins*, 7 *John. Rep.* 552.) And that the late supreme court was equally wrong in declaring that the acts of officers *de facto* are as valid and effectual when they concern the public, as though they were officers *de jure*. The affairs of society could not be

carried on upon any other principle. (*Wilcox* v. *Smith*, 5 *Wend.* 233.)

Under such circumstances, I would not have consented to unite in the decision of the main question argued before us, if it had not been that I regarded it as a very clear matter, about which there was no room for a rational doubt, and that I entertained the hope that the expression of such an opinion might have the effect to quiet litigation on the subject. If it has not that effect it has none other; except simply to remand the prisoner in this case.

Order directing the prisoner to be remanded.

