## PATTERSON v. HULINGS.

To an action on a bond for purchase-money of land, defendant may show as matter of payment that vendor had retained possession after the time agreed upon, and what was a reasonable rent for that period, and also that the property had been injured during such occupancy.

In error from the Common Pleas of Juniata.

Debt on a bond. The record did not show what were the pleas, but, in the charge of the court, it was stated that there was a plea of set-off to which the statute of limitations was replied. The bond was given for the consideration of a house agreed to be sold by plaintiff to defendant. The articles were dated January 31st, 1838; by them the plaintiff agreed to make title on the 15th April, 1838, with the privilege of retaining possession of the dwelling until the 1st November following.

The defendant offered to prove that plaintiff remained in possession until April 1st, 1839, and that a reasonable rent was $150; and that, during such occupancy, the property was injured to the amount of $100. The testimony was rejected as matter of set-off, barred by the statute, this action having been brought in 1846.

*Reed*, for plaintiff in error.—1 S. & R. 477; 5 Ib. 122.

*Mathers*, contrà.

*June* 11. BELL, J.—As the case is presented by the record— and we can judge of it but from that—it seems impossible to distinguish it, in principle, from Steigleman *v.* Jeffries, 1 S. & R. 477. That was an action brought upon a promissory note, given for the price of some burr-stones, purchased by the defendant from the plaintiff. By way of answer, the defendant was permitted to give evidence tending to prove a warranty of the stones, and a breach thereof.

The present is an action upon a bond given to secure a portion of the purchase-money of a house and lot, sold by the plaintiff to the defendant, with a covenant to deliver the possession on the 1st of October or November, 1838. For answer, the defendant, as I understand it, offered to show the plaintiff did not perform this covenant, but continued to retain possession of the premises until April, 1839; during which time he suffered them to deteriorate and decay, to the damage of the defendant.

The defence, in Steigleman *v.* Jeffries, was put by the court upon the broad and comprehensive language of our defalcation act, and was treated as being strictly a set-off under that act. But subsequent cases, in which the soundness of that determination is recognised as a conclusion, show that the notion of set-off was ill founded. In Heck *v.* Shener, 4 S. & R. 249, the older case is reviewed by the court, and it is shown the defence permitted was not properly set-off, but a reply, springing from the same transaction, and tending, from its very nature, to defeat the plaintiff's right to call for payment of a worthless commodity he had warranted to be good. The present chief justice said it was admissible, not as a set-off, but because it was *not* such. He put it upon the true ground, that it was matter affecting the *consideration* of the contract sued upon, and, therefore, competent to defeat the action; for, if the consideration failed, in whole or in part, the plaintiff's right to recover must also fail *pro tanto.* In this, he pointed out the distinction between it and·Kachlin *v.* Mulhallon,

2 Dall. 237.    There, the consideration of the bond upon which the suit was brought, was untouched by the subsequent conduct of the plaintiffs—of which the defendant offered proof—being entirely independent of it.    "But," said the judge, "if the matter had affected the *consideration* of the contract, there is no doubt but, by the equitable practice of Pennsylvania, it might have been given in evidence under the plea of payment."    Heck *v.* Shener was decided on this ground, as was also the subsequent case of Gogel *v.* Jacoby, 5 S. & R. 117, where the distinction between Steigleman *v.* Jeffries, and Kachlin *v.* Mulhallon, and Dunlop *v.* Speer, 3 B. 169, is pointed out.    In the first of these cases, the late Chief Justice Tilghman disclosed the ground of the decisions. After showing that, as the law then stood, damages flowing from an independent *tort*, or from distinct acts of a tortious nature, could not be introduced as matter of a defence, in an action *ex contractu*, he observed:—"But there are cases in which the defendant is permitted to give evidence of acts of *nonfeasance* or *misfeasance*, by the plaintiff, *where these acts are immediately connected with the plaintiff's cause of action;* although, perhaps, such evidence is not so properly a defalcation as a defeating, in whole or in part, the plaintiff's action.    For instance, in an action for work done, the defendant may show that the work was done badly." The same learned judge further illustrated the principle of this distinction, in Heck *v.* Shener, by the citation of Cooke *v.* Rhine, 1 Bay's R. (S. C.) 16.    It was there held, that in an action for work and labour performed by the plaintiff for the defendant, the latter might prove the work was not done within the time agreed on.    That is, in principle, very like our case.    Here, the consideration of the bond sued on was the conveyance of the premises and the delivery of the possession thereof, uninjured, within a limited period.    In both these instances, time was of the essence of the contract, and its non-observance went directly to the consideration of the contract, in part, at least.

There are many other cases to the same effect, but those already cited will suffice to indicate the footing upon which this defendant's offer, as it appears at present, is to be considered and determined. It is rather an alleged failure of consideration, than set-off; and, being thus a legitimate reply, which denies the cause of action, is not within the statute of limitations. I say, as the offer is presented on this record.    But a slight change of fact would make a great difference as to the principle that is to govern it.    Something was said on the argument of a deed of conveyance having been made

from Hulings & Patterson, at the time agreed on, subsequently to which, the former was considered as the tenant of the latter. If this were so, the claim of the defendant must be for use and occupation, and against the plaintiff for his misconduct as tenant. This, of course, would totally change the relative position of the parties, and the character of the defence. It would, then, no longer be misfeasance or nonfeasance in the transaction sued on; but something entirely distinct from and independent of it. It would, in truth, present a new contract, express or implied, springing from the relation of landlord and tenant, the breach of which would be the subject of set-off, and, of course, within the operation of the act of limitations.

If this be the true state of the fact, it is to be regretted it was not so made to appear on the record. Perhaps it was understood below; but we must take it as we find it here. Regarding it as thus presented, we cannot, without hazard of injustice, say the offer was wholly inadmissible. The terms in which it was made are, perhaps, somewhat equivocal; but yet it would have been better to admit the evidence, when the learned judge who presided, as well as ourselves, would have been better enabled to judge of its character. On another trial, it will be easy to make this manifest; and we think it best to remit the cause for further investigation. The record may have been imperfectly made up, but this, I repeat, we cannot help.

If the defendant, knowing the facts, shall think he has no chance under the principles now indicated as those which must govern the dispute, he will hardly press another trial. Much will depend upon whether a conveyance was made before the imputed holding over.

Judgment reversed, and a *venire de novo* awarded.