29 513
39ap195
39ap431

29 513
f47ap211

WILLIAM H. OSTRANDER, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*City of Rome — justices of the peace in, were eligible to the office of justices of the Sessions — 1870, chap. 25 — 1847, chaps. 280 and 470 — the acts of an officer de facto cannot be assailed collaterally — power of a Court of Oyer and Terminer held by a single justice of the Supreme Court to act in proceedings already commenced — Code of Criminal Procedure, sec. 23, as amended in 1882 — what orders of the Court of Oyer and Terminer are not appealable.*

The act incorporating the city of Rome (chap. 25 of 1870) provided for the election of four justices of the peace by the city at large, and declared that they should have and exercise all the powers, authority and jurisdiction, and discharge all the duties and be entitled to the fees and compensation of justices of the peace of the several towns of the State, except as modified by that act.

The act further conferred upon the recorder of the city sole and exclusive jurisdiction in said city to issue all criminal process required to be issued by justices of the peace of the several towns of the State, to hear all complaints and to conduct all examinations in criminal cases, hold courts of Special Sessions, and to do and perform all the duties of such courts, and to conduct and try all matters of a criminal nature which may by law be done or tried by a justice of the peace or by two justices of the peace.

*Held,* that the provision for the election of the justices of the peace was valid, and that the legislature had power to confer upon and withhold from them the respective powers above mentioned.

That the justices elected in pursuance of it were justices of the peace and might be designated under section 40 of chapter 280 of 1847, as amended by section 34 of chapter 470 of that year, to serve as justices of Sessions, and as such to sit in courts of Oyer and Terminer.

That even if the act were invalid, yet until the title of one acting as a justice of Sessions had been declared invalid in a proceeding by *quo warranto,* the legality of a Court of Oyer and Terminer, of which he was a member, could not be assailed upon a motion to have the court fix a day for the execution of a prisoner, under a sentence imposed in pursuance of a judgment which had been affirmed by the General Term upon a writ of error.

So much of section 40 of chapter 280 of 1847 as required justices of the Sessions to be elected from justices of the peace, "having at least two years from the first day of January next after said election to serve," was repealed by section 34 of chapter 470 of the same year.

A Court of Oyer and Terminer held by a justice of the Supreme Court, without an associate, as authorized by section 23 of the Code of Criminal Procedure, as amended by chapter 360 of 1882, may fix a day for the execution of a sentence, imposed by a Court of Oyer and Terminer which had been held by such a justice and two justices of the Sessions prior to the passage of the said amendment.

Upon a motion to have the court fix a day for the execution of a sentence of death, pronounced in pursuance of a judgment which had been affirmed by the General Term, the prisoner's counsel moved to have the court refuse to fix the day, upon the ground that the Court of Oyer and Terminer before which the prisoner was tried was illegally and improperly constituted.

*Held,* that the Code of Criminal Procedure did not authorize an appeal from an order denying the prisoner's application and fixing a day for the execution of the sentence.

APPEAL from an order made at a Court of Oyer and Terminer, held January, 1883, in Oneida county, denying an application to vacate and annul the trial and conviction of the plaintiff in error of murder, and all subsequent proceedings.

In October, upon a writ of error to review the conviction of the prisoner, of murder in the first degree, in the Oneida Oyer and Terminer, the General Term of this department affirmed the judgment entered upon such conviction and remitted the proceedings to the Oyer and Terminer of Oneida, with instructions to proceed thereon.

In the January Oyer and Terminer of 1883 the district-attorney moved the court to fix a day for the execution of the sentence of death theretofore pronounced upon the prisoner in pursuance of such judg-

ment and directions. Thereupon the prisoner's counsel filed an affidavit made upon information and belief, in which it is stated, viz.:

*First.* That one Benjamin B. Kenyon, of the city of Rome, was on or about the 3d day of November, 1879, elected a justice of the peace in and for said city, in accordance with an act of the legislature entitled "An act to incorporate the city of Rome, passed February 23, 1870."

*Second.* That January 1, 1880, said Kenyon entered upon the duties of said office, and has held said office ever since.

*Third.* That on the 8th of November, 1881, said Kenyon was elected a justice of sessions of the county of Oneida, and held said office until January 1, 1883.

*Fourth.* That at the September or October term of the Oyer and Terminer, held at Rome, in said county, September 26, 1881, and at which term said William H. Ostrander was tried for murder, the said B. B. Kenyon, Esq , was then an acting justice of the Sessions, and sat as such member of said court during the trial of said Ostrander, and all of said trial, together with one Maxfield, a justice of the peace in and for the town of Annsville, New York; that said Maxfield, at that time or at the time of his election, had not two years to serve as such justice of the peace in and for said town of Annsville.

Upon reading to the Oyer and Terminer the affidavit, the substance of which we have quoted, the prisoner's counsel requested the court, among other things, to hold as a matter of law: First. That the trial and conviction of the prisoner was illegal, as the court was illegally and improperly constituted; that Benjamin B. Kenyon and Maxfield, nor either of them, were constitutional justices of the peace, and were not qualified to sit as justices of the Sessions on said trial.      *      *      *      *      *
Also that no sentence can now be given the prisoner, unless said court shall be organized as at the time of his said trial.

The prisoner's counsel contended that the justices of the peace of the city of Rome, deprived as they were by the act providing for their election of all criminal jurisdiction, were local officers, and not justices of the peace, within the meaning of these terms as used in the Constitution, and that they were for this reason ineligible to the office of a justice of the Sessions.

The Oyer and Terminer made an order denying the applications made by the prisoner, and from the order so made the prisoner, on the 12th day of March, 1883, appealed to this court. The Oyer and Terminer proceeded to fix a new day for the execution of the sentence.

*Milton D. Barnett* and *Leonard Bronner*, for the appellant.

*W. A. Matteson*, district-attorney, for the People.

HARDIN, J.:

By chapter 25 of the laws of 1870, the city of Rome was incorporated. (Laws 1870, vol. 1, p. 40.)

The first section of the charter declares, viz.: "All that part of the county of Oneida now known as and being the town of Rome, shall be a city known as the city of Rome," * * * etc. Section 1 of title 2 contains provisions enumerating the officers of said city, and among them it is declared that 'four justices of the peace' shall be elected by the city at large, and section 10 of the same title declares, viz.: The term of office of the justices of the peace to be elected under this act shall commence on the first day of January next ensuing their election, and each of such officers shall take the oath of office within ten days thereafter, and file the same with the clerk of Oneida county.

In section 13 of title 4 it is declared, viz.: "The justices of the peace of the said city shall have and exercise all the powers, authority and jurisdiction and discharge all the duties and be entitled to the fees and compensation of justices of the peace of the several towns in the State, except as modified by this act." And all laws applicable to justices of the peace of the several towns and to their official acts, duties and powers, shall apply to the justices of the peace of said city, and to their official acts, duties and powers.

In section 1 of title 7 is a provision conferring upon the recorder of said city sole and exclusive jurisdiction in said city to issue all criminal process required to be issued by justices of the peace of the several towns of this State, to hear all complaints and to conduct all examinations in criminal cases, hold Courts of Special Sessions, and to do and perform all the duties of such courts, and to conduct and try all matters of a criminal nature which may by law be done

or tried by a justice of the peace or by two justices of the peace." Then follows, in section 3 of the same title, a provision that "in case of sickness, absence from the city, disability or inability to act, of the said recorder," conferring and imposing "his powers and duties" upon either of the several justices of the peace of said city.

We are of the opinion the charter, in its provisions as to justices of the peace, is valid, and that it was competent for the legislature to confer upon them the powers emanated in the charter, and to withhold from them in the cases prescribed the powers which otherwise would devolve upon them.

Section 18 of article 6 of the Constitution, as it was amended in 1869, was in force when the charter was passed. That section of the Constitution declared, viz. : " Justices of the peace and District Court justices shall be elected in the different cities of this State in such manner _and with such powers_ and for such terms respectively as shall be prescribed by law." It was clear then that when Kenyon was elected a justice of the sessions, he was a " justice of the peace," and he was eligible to the office of justice of sessions. (Sec. 15 of art. 6, Const.)

He was a justice of the peace in the county of Oneida, and therefore, within the terms of section 40 of chapter 280 of the Laws of 1847, eligible to the office of justice of Sessions. However, if there was doubt in our minds in respect to his eligibility to the office of justice · of Sessions, we should incline to the opinion that he was a justice of Sessions _de facto_, and that his acts would be valid and binding upon third parties until questioned and declared invalid in a proceeding of _quo warranto_ directly had for that purpose, and that the Oyer and Terminer of January, 1883, where the motion was made to fix a new day for the execution of the sentence of the prisoner, had no power to set aside the conviction and judgment thereon, with the affirmance thereof by this court pronounced in October, 1882.

In _People_ v. _White_ (24 Wend., 526), BRONSON, J., said : " But this is a case where officers having apparent authority to do the act have rendered judgment between the people and the prisoner, and neither party can, in this collateral way, call in question the title of the judges. If there had been judgment of acquittal, it would have

concluded the people and the prisoner could not have been further prosecuted." (Approved in *Nelson* v. *People*, 23 N. Y., 296; see *Morris* v. *People*, 3 Denio, 397; *In re Philip Wakker*, 3 Barb., 162; *Cronin* v. *Gundy*, 16 Hun, 524.)

The affidavit used in the Oyer and Terminer, when the order was made which we are considering, stated that Maxfield, who was a justice of the peace of the town of Annsville at the time of his election, had not two years to serve as such justice of the peace in and for said town of Annsville. That fact does not impeach or impair his right to act as a justice of Sessions. In section 34 of chapter 470 of the Laws of 1847 it was provided, viz.: "And no justice shall be so designated unless he shall be entitled to serve as a justice of the peace *during* such year by virtue of the election under which he shall be acting as such justice at the time of such designation." This provision was an amendment of section 40 of chapter 280 of the Laws of 1847, which required a justice of the peace to be eligible to have at least two years from the first day of January next after said election to serve. The later statute controls, and Maxfield was *de jure* a justice of Sessions. (*Nelson* v. *People*, 23 N. Y., 296.)

There was no error in refusing to amend the record in respect to what took place in the Oyer and Terminer before the trial of the prisoner. The application came late. The record as made up had been presented to this court and acted upon, and our judgment, based upon that record, was conclusive upon the Oyer and Terminer, where the prisoner was taken in January, 1883, for the purpose of having a day named for its execution. Besides, there was no proof upon which the court could act which indicated that the judgment record was erroneous. The motion in regard to what transpired in regard to entering a special plea, after a general plea of not guilty, was properly denied.

These views lead us to conclude that no error was committed by the Oyer and Terminer held in January, 1883, in making the order directed by it and entered in Oneida county as of the term commencing January 29, 1883.

*Fourth.* It is now urged that the Oyer and Terminer sitting in January, 1883, held by a justice of this court, without any associate, erred in holding that it had power to sentence the prisoner without

the two associate justices being present. On the 21st of June, 1882, by chapter 360 of the laws of that year, section 23 of the Code of Criminal Procedure was amended so as to read, viz. :

A Court of Oyer and Terminer is held by a justice of the Supreme Court, without an associate.

After its passage, there was no law which authorized justices of Sessions to sit in the Oyer and Terminer. The prisoner's counsel calls our attention to section 962 of the Code of Criminal Procedure. That section declares that " criminal actions " and " proceedings in criminal cases " theretofore commenced must be conducted in the *same manner* as if this Code had not been passed. This provision does not relate to the organization of the court. Full effect may be given to the words of section 962 by limiting them to " the manner " in which proceedings or actions shall be " conducted " after they are taken up by any court to which they shall be presented. The organization of a court is one thing ; its manner of conducting its proceedings or actions pending in it is quite another.

Giving full effect to section 23, as amended in 1882, and to section 962, we hold that the Oyer and Terminer was rightly organized when a justice of this court sat alone, as section 23 prescribes he may, without associates. ( *Willet* v. *People,* 27 Hun, 470.)

The views we have expressed lead us to say no error was committed by the Oyer and Terminer of January, 1883.

Had the district attorney moved to dismiss the appeal taken from the order, we should have been inclined to grant the motion. There is no provision of the Code of Criminal Procedure authorizing such an appeal as the one now before us. Section 517 authorizes an appeal to this court " from the judgment on a conviction after indictment, and upon *the* appeal any actual decision of the court in an intermediate order or proceeding forming a part of the judgment-roll \* \* \* may be reviewed." This does not authorize an appeal in piecemeal, first from a judgment, and after it is affirmed an appeal from any subsequent *order* by a separate and independent appeal. (See *Piper* v. *Van Buren,* 27 Hun, 384 ; sec. 485 of Code of Crim. Proc.)

As such motion was not made, we have looked into the merits and come to the conclusion that the order ought not to be reversed

by us, and under the peculiar circumstances we conclude to affirm the order, instead of dismissing the appeal upon our own motion.

SMITH, P. J., and MACOMBER, J., concurred.

Order appealed from affirmed and papers ordered filed with the clerk of Oneida county.