## Enterline, Appellant, *v.* Miller.

*Attorney at law—Duties and liabilities—Professional skill.*

An attorney at law is not liable to his client for a failure to succeed, resulting in loss to the client, unless this is due to his mismanagement of the business intrusted to him through bad faith, inattention, or want of professional skill. An attorney must, at least, be familiar with the well-settled principles of law and rules of practice which are of frequent application in the ordinary business of the profession; must observe the utmost good·faith toward his client, and must give such attention to his duties, and to the interests of his client, as ordinary prudence demands, or members of the profession usually bestow. For loss to his client, resulting from the lack of this measure of professional duty and attainments, he must be held

liable; and such loss forms an equitable defense to his demand for compensation.

An attorney must be held to know the return day of process issued by his direction, must keep himself informed of the steps taken by the sheriff in its execution, and must give all instructions necessary to secure his client's interests. It is usual for the attorney, on execution process, to give directions respecting the property which he desires should be sold, especially when this is real estate; and, if he omits this, he should, at least, ascertain what has been done in the premises by the sheriff, and act as the interests of his client requires. He must be held to know that when the return day of a fi. fa. has passed without a levy, the writ is functus officio; that a vend. ex. is issued only for a sale by virtue of a levy made on an antecedent writ; and he must at all times inform himself of the state of the record; and of the sheriff's proceedings, before taking or directing any further step based thereon.

An attorney is not responsible for a mistake of the sheriff to which he in no way contributes. But when he acquiesces in such a mistake, and directs further proceedings, founded on it, he makes the error his own, and is answerable for the loss to his client arising from such proceedings.

Where the sheriff makes a levy after the return day of the writ, and the attorney directs further proceedings based on the void levy, the attorney will be liable to his client for the loss sustained.

*Statute of limitations—Contract—Performance—Negligence—Pleading.*

When an action is based on the defendant's negligence the statute of limitations operates on it as on any other. And when a demand, arising from the plaintiff's negligence in an independent transaction, is set up by the defendant as a counterclaim, under our defalcation act, this is, in like manner, subject to the bar of the statute. But negligence on the part of the plaintiff, inherent in the cause of action, and operating to defeat it, stands on different ground. In an action on a contract, the right of recovery is based on performance; hence, whether due to negligence or to other causes, nonperformance is a full defense, and ill performance a defense pro tanto. Such defense is not merely a set-off, balancing or reducing the plaintiff's demand, but strikes at his right of action by impeaching the consideration on which it rests, and showing that, ex æquo et bono, his claim has no foundation, or is limited in measure. It requires no special plea, but may be shown under the general issue, and is so involved in the cause of action that it cannot be separated, and subjected independently to the operation of the statute of limitations. As long as an action on the contract is not barred by the statute, failure of performance from any cause, as a defense in whole or in part, remains unaffected by it.

Argued Dec. 6, 1904. Appeal, No. 72, Oct. T., 1904, by plaintiff, from judgment of C. P. Schuylkill Co., July T., 1902, No. 21, on verdict for plaintiff in case of S. M. Enterline v. John M. Miller. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit to recover for professional services.   Before
BECHTEL, P. J.

From the record it appeared that plaintiff claimed to recover
the sum of $907.05 for professional fees and expenses in con-
nection with the estate of John Miller, deceased.   The defend-
ant claimed that through the plaintiff's negligence in his pro-
fessional work a loss to the estate had resulted in excess of
the amount of claim.   The negligence alleged was in proceed-
ing on a levy made by the sheriff after the return day of the
writ.

Plaintiff presented, amongst others, these points:

4. If the jury believe from the evidence that a mistake was
made by the sheriff in making his levy too late, under the
John Miller writ on the John Wolfgang real estate, and after
the return day of the writ, whereby the levy and all subsequent
proceedings therein were defective or void, the plaintiff, Enter-
line, cannot be visited with or held for the consequences of
such mistake or error of the sheriff, and no deduction from his
claim for legal services should be made by the jury on that ac-
count.   *Answer:* The plaintiff cannot be held responsible for
any negligence of the sheriff with which he has nothing to
do.   But only, for his own careless or negligent acts that re-
sult in damage to his client, if such are known to exist in this
case. [4]

8. That the right of action against an attorney at law for
damages or losses for negligence or unskillfulness accrued at the
time when the alleged negligence or unskillfulness took place,
and not at the time the consequences thereof ensued or are
discovered, and if the jury find from the evidence that the
plaintiff was unskillful or negligent in not discovering the error
of the sheriff when it was made in July, 1897, and in issuing
the Miller writ for the sale of the Wolfgang real estate in
August of that year, any loss or damage that the Miller estate
subsequently suffered by reason of such unskillfulness or negli-
gence could not be set up now by Miller as a defense to the
plaintiff's claim, because more than six years have elapsed
since his right or cause of action accrued against the plaintiff.
*Answer:* As a general rule the statute of limitations begins
to run from the time a right of action exists.   In this case
the plea of set-off was entered November 5, 1903, and we are

466 ENTERLINE, Appellant, *v.* MILLER.

inclined to believe that no set-off can be offered or allowed, unless it occurs within six years prior to that time. That is, only such damages as occurred by reason of the plaintiff's careless or negligent acts between November 5, 1897, and November 5, 1903, can be considered. [5]

10. If the jury find from the evidence that John M. Miller, the defendant, retained the plaintiff, Enterline, in his employ as his attorney, and advisor, several years after he admits he discovered the alleged error of the sheriff, and paid him sundry payments on account of his charges and fees for his legal services, such action by Miller is evidence of his ratification, adoption and approval of the plaintiff's legal services on his behalf, and he cannot now, over six years from the time the alleged misfeasance was committed, set up the same as a set-off in this suit, against the plaintiff's claim, and your verdict should be in favor of the plaintiff for a fair compensation. *Answer :* We cannot instruct you from anything contained in this point that the defendant cannot set up alleged misfeasance against the plaintiff and that your verdict should be in favor of the plaintiff. We decline to say what your verdict shall be, and leave you to find what the verdict shall be, but say that you are to consider all the evidence before you in determining what your verdict shall be. [6]

Verdict and judgment for plaintiff for $100. Plaintiff appealed.

*Errors assigned* among others were (4–6) above instructions, quoting them.

*J. W. Moyer*, with him *S. M. Enterline*, for appellant.—The defense was barred by the statute of limitations : Reed v. Marshall, 90 Pa. 345; Moore v. Juvenal, 92 Pa. 484; Binney's App., 116 Pa. 169; Owen v. Saving Fund, 97 Pa. 47; Dunlap v. Linton, 144 Pa. 335; Johnston v. McCain, 188 Pa. 513; Lehigh Coal, etc., Co. v. Blakeslee, 189 Pa. 13; Link v. McLeod, 194 Pa. 566; Guarantee Trust, etc., Co. v. Farmers', etc., Nat. Bank, 202 Pa. 94; Noonan v. Pardee, 200 Pa. 474.

No attorney is bound to know all the law: Watson v. Muirhead, 57 Pa. 161; McClintock's App., 29 Pa. 360; York's App., 110 Pa. 69.

*A. W. Schalck*, with him *John F. Whalen*, for appellee.—The right of recoupment in an action ex contractu is inseparably annexed to the contracts and survives as long as the plaintiff's right of action subsists. It is not barred by the statute of limitations until the claim of the plaintiff is barred, notwithstanding the statute may have run against it as a separate cause of action.

Plaintiff was responsible for the loss occasioned by his lack of skill: Waugh v. Shunk, 20 Pa. 130; Heck v. Shener, 4 S. & R. 249; Blessing v. Miller, 102 Pa. 45; Eckel v. Murphey, 15 Pa. 488; Pownall v. Bair, 78 Pa. 403; Glennon v. Lebanon Mfg. Co., 140 Pa. 594; Wymard v. Deeds, 21 Pa. Superior Ct. 332; Rafferty v. Clark, 2 Pa. C. C. Rep. 301; Murran v. Plymouth Coal Co., 3 Kulp, 103; Siner v. Stearne, 155 Pa. 62; Cox v. Livingston, 2 W. & S. 103; Riddle v. Poorman, 3 P. & W. 224; McWilliams v. Hopkins, 4 Rawle, 382.

Opinion by Smith, J., March 14, 1905:

This is an action by an attorney-at-law against his client, to recover compensation for professional services. The defense is that there was such negligence in the performance of the services that the client suffered serious loss, and that for this reason the plaintiff has no just claim to compensation.

An attorney is not liable to his client for a failure to succeed, resulting in loss to the client, unless this is due to his mismanagement of the business intrusted to him, through bad faith, inattention or want of professional skill. Without discussing at length the degree of skill and care required of an attorney, it is sufficient for the purposes of the case in hand to say that he must, at least, be familiar with the well-settled principles of law and rules of practice which are of frequent application in the ordinary business of the profession; must observe the utmost good faith toward his client; and must give such attention to his duties, and to the interests of his client, as ordinary prudence demands, or members of the profession usually bestow. For loss to his client, resulting from the lack of this measure of professional duty and attainments, he must be held liable; and such loss forms an equitable defense to his demand for compensation.

Tested by this standard, there was an obvious lack of pro-

fessional skill and care on the part of the defendant, in the proceedings for the collection of the Wolfgang claims. An attorney must be held to know the return day of process issued by his direction, must keep himself informed of the steps taken by the sheriff in its execution, and must give all instructions necessary to secure his client's interests. It is usual for the attorney, on execution process, to give directions respecting the property which he desires should be sold, especially when this is real estate; and, if he omits this, he should, at least, ascertain what has been done in the premises by the sheriff and act as the interest of his client requires. He must be held to know that when the return day of a fi. fa. has passed without a levy, the writ is functus officio; that a vend. ex. is issued only for a sale by virtue of a levy made on an antecedent writ; and he must at all times inform himself of the state of the record, and of the sheriff's proceedings, before taking or directing any further step based thereon. Here the fi. fa. was issued June 25, 1897, returnable July 5. It remained without action by the sheriff until July 8, when a levy was made on the defendant's real and personal property. The latter was sold August 10, and between that date and August 19 the writ was returned with the real estate levy. On August 20 a vend. ex. was issued, by the plaintiff's direction, for the sale of the land described in the levy. Later, the fi. fa. was taken from the prothonotary's office, and on August 25 an inquisition was held under the act of 1840, with six jurors, to ascertain whether that portion of the land lying in Schuylkill county could be sold separately, with a finding against such sale. The fi. fa., with the inquisition attached, was then returned to the prothonotary's office, and September 11 the land was sold on the vend. ex. to the judgment creditor for $3,500.

The proceedings subsequent to the return day of the fi. fa. were wholly irregular, and no title passed by the sale. They were in disregard of well-settled rules of practice, which every attorney must be expected to understand and observe. An attorney is not, indeed, responsible for a mistake of the sheriff to which he in no way contributes. But when he acquiesces in such a mistake, and directs further proceedings, founded on it, he makes the error his own, and is answerable for the loss

to his client arising from such proceedings. Here the only mistake made by the sheriff, independently of the plaintiff, was in making a levy after the return day of the fi. fa., when the writ no longer authorized it. This, of itself, was a harm-less matter, and would have resulted in no ill consequences had not the plaintiff adopted it as a valid levy, and made it the foundation of the inquisition and sale. In these proceedings the sheriff and his deputy acted in accordance with the plaintiff's instructions, apparently against the deputy's better judgment, and after he had suggested the propriety of staying the vend. ex. and issuing an alias fi. fa. on which to hold the inquisition. Instead of acting on this suggestion, the plaintiff chose to proceed on the erroneous levy, and fixed the number of jurors for the inquisition at six. We do not say, however, that the proper number of jurors was a matter admitting of no doubt, or that an error on this point should be deemed professional negligence. Neither the act of 1836, requiring an inquisition of rents and profits for seven years, nor the act of 1840, requiring an inquisition of lands lying in adjoining counties, specifies the number of jurors; the provision of each being that the sheriff shall " summon an inquest." As to the former inquisition, the Act of January 12, 1705, 1 Sm. L. 57, fixed the number at twelve, and the Act of March 21, 1806, 4 Sm. L. 326, provided that on a levy of real estate " such proceedings shall be had as the existing laws direct." The practice under the act of 1836 necessarily followed the act of 1705 as to the number of jurors, and in default of any other provision this was adopted in proceedings under the act of 1840. The Acts of June 11, 1879, P. L. 122, and May 10, 1881, P. L. 13, fixed the number of jurors in an inquisition of rents and profits at six, and the former repealed all inconsistent acts and parts of acts. This repealed the act of 1705 as to the number of jurors. Whether, on this point, in proceedings under the act of 1840, the act of 1705 is to be deemed still subsisting, or the inquest should be in conformity with the acts of 1879 and 1881, we need not here decide. The question is not so free from doubt that an attorney must be required to decide it correctly, on pain of being held lacking in professional knowledge should the courts reach a different conclusion. But the fatal defect in the proceeding was in holding an inquisition on

a writ after its authority was exhausted, with a sale on a writ not warranted by the state of the record. There being no valid levy, there was no authority for inquisition or sale; and this was so obvious that it should have been detected by the exercise of ordinary care on the part of an attorney.

The contention that the defendant, by his continued employment of the plaintiff after the inquisition and sale, ratified his acts, cannot be sustained. Through lack of professional knowledge, the defendant was unable to judge of the situation, and trusted to the plaintiff for information; while it was not until October 11, 1901, that it was judicially determined, in Boyer v. Miller, 200 Pa. 589, that he acquired no title to the land. Meantime the plaintiff, orally and in correspondence, steadily insisted that the proceedings were regular. After assuring him for years that his title was good, it comes with an ill grace for the attorney now to contend that his client should have known that the law was otherwise, and ceased to employ him. When the condition of the title became manifest, the further employment of the plaintiff appears to have been chiefly in negotiations designed to minimize the loss; but while the plaintiff evidently secured the best result attainable, his employment for the purpose committed the defendant to nothing by way of ratification of the acts to which the loss was due.

The plaintiff further contends that as the plea of set-off was not entered until more than six years after the inquisition and sale, the statute of limitations is a bar to any claim on the part of the defendant growing out of the alleged negligence. This view rests on a misconception. When an action is based on the defendant's negligence, the statute of limitations operates on it as on any other. And when a demand, arising from the plaintiff's negligence in an independent transaction, is set up by the defendant as a counter claim, under our defalcation act, this is, in like manner, subject to the bar of the statute. But negligence on the part of the plaintiff, inherent in the cause of action, and operating to defeat it, stands on different ground. In an action on a contract, the right of recovery is based on performance; hence, whether due to negligence or to other causes, nonperformance is a full defense, and ill performance a defense pro tanto. Such defense is not merely a set-off, balancing or reducing the plaintiff's demand, but strikes at his

right of action by impeaching the consideration on which it rests, and showing that, ex æquo et bono, his claim has no foundation, or is limited in measure. It requires no special plea, but may be shown under the general issue, and is so involved in the cause of action that it cannot be separated, and subjected independently to the operation of the statute of limitations. As long as an action on the contract is not barred by the statute, failure of performance from any cause, as a defense in whole or in part, remains unaffected by it.

Notwithstanding the able argument in behalf of the appellant, and a careful examination of the charge and evidence, we are unable to find any ground on which the specifications of error can be sustained. In ruling on questions of evidence, and in the charge and answers to points, the trial judge was considerate of the plaintiff's position, professionally, and carefully guarded his rights in the premises. The matters in controversy were submitted to the jury with instructions that gave the plaintiff at least every advantage to which he was entitled, and there appears no reason for regarding the verdict as unwarranted by the evidence.

Judgment affirmed.