## Girard Discount Company v. Layton

*Domenic D. Jerome,* for plaintiff.
*Robert J. Scallan,* for defendants.

## OPINION

DIGGINS, J., July 7, 1965. — This matter initially came before this court on defendants' petition to open judgment. The late Hon. William R. Toal opened the judgment and let defendants into a defense. Subsequently, plaintiff, use plaintiff and defendants, through counsel, entered into a court-approved stipulation to the effect, inter alia, that the issues in the case be framed by a complaint and answer, reserving unto defendants the right to file a counterclaim. A complaint in assumpsit was thereupon filed in due course by plaintiff, Girard Discount Company, and defendants filed an answer thereto containing new matter and a counterclaim. Plaintiff has filed preliminary objections to defendants' counterclaim which are now before the court for disposition.

Plaintiff's complaint avers, inter alia, that:

1. On November 17, 1959, an automobile dealer sold an automobile to defendants for which the total charges aggregated $2,496.96 to be paid in 36 monthly instalments of $69.36, same secured by a security agreement executed by defendants;

2. The security agreement shows a cash price of $1,883.50; a cash credit of $300; an advance for insur-

ance of $135, liability, etc., and $112.37, life; other costs of $550 and a finance charge of $660.59;

3. The dealer then assigned the security agreement to plaintiff;

4. Prior to the assignment, defendants signed a statement, stating satisfaction with the automobile as well as the terms and extent of the repayment, and plaintiff also obtained from defendants a declaration of no setoff;

5. Plaintiff thereupon paid the dealer;

6. Plaintiff entered judgment against both defendants for $2,496.96;

7. Defendants made the required payments until May 29, 1961, when the acount became in default when $1,325.10 was still due and owing;

8. Defendant, Anna Walton, sold certain real estate titled in her name and title was insured by the use plaintiff upon the said defendant's advice that plaintiff's judgment was not against her;

9. Plaintiff made demand on the use-plaintiff for payment, and thereafter the use-plaintiff requested plaintiff to sell the vehicle at public sale in compliance with the applicable statutory provisions;

10. The automobile was sold for $150 and plaintiff credited defendants' account for the said sum as well as other sums for insurance cancellation, unused financing charges, etc.; and

11. A net balance of $788.61 is due to use-plaintiff, who paid plaintiff and took an assignment of the judgment.

Defendants' answer and new matter averred, inter alia, that:

1. The total sale price was $1,460, less a down payment of $300, leaving a balance of $1,160;

2. They did not agree to the sum of $2,496.96 in instalments of $69.36, nor did they request the placing of

liability insurance and received no policy regarding same;

3. They were fraudulently induced to sign a blank agreement and other documents which were not completed when executed, including statements regarding satisfaction with the automobile, the terms of payment, etc., and the declaration of no setoff;

4. Defendant, Layton, was advised that he could obtain possession of the automobile for $1,215.11;

5. Plaintiff's representative obtained Walton's signature to the documents under the pretense that she was signing only as a reference for her nephew, Layton, and was assuming no obligation;

6. Plaintiff fraudulently completed the blanks on the various documents to show the sale price of the car as $1,883.50 instead of $1,460;

7. Plaintiff failed to comply with and violated the Motor Vehicle Sales Finance Act in certain particulars;

8. Defendant, Layton, advised plaintiff's representative that he could not pay more than $50 a month toward the purchase price of the car and was assured that the monthly obligations would not exceed same; and

9. Plaintiff failed to obtain the reasonable market value of the vehicle, same being approximately $600.

Defendants also filed a counterclaim which is the subject of the preliminary objections. The counterclaim demands judgment against plaintiff in an amount in excess of $5,000 and *incorporates by reference the answer and new matter*. In addition, it is averred in the counterclaim that defendant, Layton, was unable to redeem the repossessed vehicle within the time limited by statute as plaintiff's agents required payment of the balance pursuant to the security agreement which was procured by fraud; that both defendants were required to employ the services of an attorney; that defendant, Walton, has suffered embarrassment and inconvenience

in having execution issue on a bank account maintained with another person, and that plaintiffs have caused embarrassment and extreme aggravation to defendants through their willful and fraudulent acts, thus entitling them to punitive damages.

Plaintiff, as aforesaid, has filed preliminary objections to the above-stated counterclaim in the form of a demurrer which are twofold in nature, i.e.: (1) The counterclaim fails to state a cause of action, and (2) the counterclaim seeks damages for alleged tortious conduct, and such conduct cannot be the basis of a counterclaim in an assumpsit suit. Although the preliminary objections are not without merit, we conclude, for the reasons hereinafter set forth, that they must be dismissed.

Pennsylvania Rule of Civil Procedure 1031, relating to counterclaims, provides as follows:

"(a) The defendant may set forth in the answer under the heading 'Counterclaim' any cause of action or setoff which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose or (2) which arises from contract or is quasi-contractual.

"(b) A counterclaim need not diminish or defeat the relief demanded by the plaintiff. It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff."

The commentary to the said rule properly summarizes the law, i.e., that there is an unlimited right to counterclaim in assumpsit for *all* causes of action which arise from the transactions upon which plaintiff's suit is founded, irrespective of their character; further, there is an unlimited right to counterclaim for all causes of action which arise from outside transactions, if such causes of action are contractual or quasi-con-

tractual and that any other counterclaim is forbidden. Thus, the purpose of rule 1031 is to permit any counterclaim in the nature of contract and any counterclaim in trespass that arises from the same transaction, in order to avoid a multiplicity of suits: Hannigan v. Hannigan, 75 D. & C. 67.

In the Hannigan case, supra, plaintiff filed a complaint in assumpsit, seeking to recover a portion of the selling price of real estate in accordance with the provisions of a property settlement agreement. Defendant, inter alia, filed a counterclaim containing two counts, the second of which averred that plaintiff's decedent drove an automobile on the grass and shrubbery of the premises causing damage thereto as well as other damage requiring an adjustment with the purchasers, same being the amount of the counterclaim. In dismissing the objections to this counterclaim, the court said, at pages 69-70, in referring to Pa. R.C.P. 1031:

"This rule permits and contemplates that a defendant may counterclaim in trespass though plaintiff's action be in assumpsit. Part two permits *any* counterclaim in the nature of contract, and part one permits counterclaim for 'any cause of action' if it arises from the same transaction. We think this rule is to be liberally construed so that multiplicity of actions may be avoided and a disposition of the bases of litigation as between the parties made in a single proceeding. The pleadings indicate that the parties entered into an agreement to sell realty for an agreed purchase price and with an agreement as to the manner of distribution of the proceeds. In consummating this agreement defendant was obliged to make allowance to the grantee for the damage forming the basis of defendant's counterclaim. The burden of these damages cannot be avoided by plaintiff in his suit for his alleged share of the proceeds of the sale. See 2 Anderson, Pennsylvania Civil Practice (1950 ed.), page 469. The adoption of

rule 1031 (a) distinctly departs from the provision in section 14 of the Practice Act of May 14, 1915, P. L. 483, which provided that 'in actions of assumpsit a defendant may set off, or set up by way of counterclaim, against the claim of the plaintiff, any right or claim for which an action of *assumpsit* would lie.' The right to counterclaim under rule 1031(a) is not limited to assumpsit. This change was early indicated in those cases holding that a plaintiff's negligence or tort could be pleaded as a bar to his right of recovery in contract if such tort were inherent in the cause of action, i.e., arose from the same transaction. See Glennon v. Lebanon Mfg. Co., 140 Pa. 594; Pownall v. Bair, 78 Pa. 403; Hunt v. Gilmore, 59 Pa. 450; Price v. Lewis, 17 Pa. 51; Eckel v. Murphey, 15 Pa. 488; Patterson v. Hulings, 10 Pa. 506; Gogel v. Jacoby, 5 S. & R. 117; Heck v. Shener, 4 S. & R. 249; Steigleman v. Jeffries, 1 S. & R. 477; Leech v. Baldwin, 5 Watts 446; Rothrock v. Wolfe, 99 Pa. Superior Ct. 30, 33; Parker v. Shoemaker, 46 Pa. Superior Ct. 99; Enterline v. Miller, 27 Pa. Superior Ct. 463; Milwaukee Locomotive Manufacturing Co. v. Point Marion Coal Co., 3 D. & C. 131.

"Rule 1031(a) now permits an actual affirmative recovery by counterclaimant though the counterclaim sound in trespass."

See also, inter alia, Firstenberg v. Bennett, 45 Del. Co. 261; Wallace v. Knudsen, 105 Pitts. L. J. 190; Atlas Credit Corporation v. Dolbow, 193 Pa. Superior Ct. 649, and Rose v. Eicher, 1 D. & C. 2d 759.

We are not unmindful of the holdings, inter alia, in Bloom v. Devonian Gas & Oil Company, 397 Pa. 309, and Norristown Ford Company v. Metropolitan Auto Dealer, Inc., 88 D. & C. 546. However, the facts in these two cases are distinguishable from those present in the instant case. In the Bloom case, the counterclaim concerned a different property than that upon which plaintiff's suit was based; in the Noristown case, the

counterclaim arose from alleged slander resulting from subsequent disputes between the parties concerning the terms of their contract.

In the instant case, it appears to us that defendants' counterclaim falls within the purview of Pa. R. C. P. 1031 and is interwoven with plaintiff's action arising from the same transaction. Moreover, defendants' answer and new matter were incorporated in the counterclaim. Whether defendants, or either of them, are or are not entitled to punitive damages of course must be dependent on the trial of the cause.

We therefore make the following

### ORDER

And now, July 7, 1965, plaintiff's preliminary objections to defendants' counterclaim in the nature of a demurrer be and the same are hereby dismissed. Plaintiff is directed to file a reply to defendants' new matter and counterclaim within 20 days of the date hereof.